IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CRYSTAL MINNIX, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 7:23-cv-091 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| SINCLAIR TELEVISION GROUP, ) | Chief United States District Judge |
| INC, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Motions to Dismiss from two sets of defendants: Bridgette Craighead and Black Lives Matter Franklin County (together, the "Local" defendants), ECF No. 8, and Sinclair Television Group, Inc., Sinclair Broadcast Group, Inc., ACC Licensee, LLC, Devin Dwyer, Elizabeth Thomas, and Jacqueline Yoo (together, the "Media" defendants), ECF No. 10. Plaintiffs filed a Motion to Remand for lack of jurisdiction. ECF No. 15.

For the reasons below, the plaintiffs's Motion for Remand, ECF No. 15, is **DENIED**. Both the Motions to Dismiss as to the Local defendants, ECF No. 8, and the Media defendants, ECF No. 10, are **GRANTED**. Further, the Local defendants request for attorney fees and costs, ECF No. 8, is **GRANTED**.

### I. Background

In January 2022, the Media defendants broadcast a news segment (the "Segment") titled "COP'S ROLE IN JANUARY 6 ATTACK DIVIDES VIRGINIA TOWN WITH TIES TO CONFEDERACY." Compl., ECF No. 1-1, at ¶ 1. Individual Media defendants

Dwyer, Thomas, and Yoo created this Segment, which discusses the Rocky Mount community's reaction to learning that two local law enforcement officers were at the United States Capitol on January 6, 2021. Id. From timestamps 0:57 to 1:01—a period of no more than four seconds—the Segment included footage of the Minnix's red, white, and blue home. ECF No. 10-1, Ex. A.

A minor child is briefly visible far to the side in the image. Id. Immediately preceding display of the Minnix home, the Segment depicts Media defendant Dwyer, a reporter, interviewing Local defendant Craighead, director of Black Lives Matter Franklin County. Compl., ECF No. 1-1, at ¶¶ 32–33. During this interview, Craighead says "It[']s their land and their country and we just live in it" ("Craighead's Statement"). Id. at ¶ 32. Plaintiffs claim that this is "a clear reference that white people control the land." Id. While the Minnix home is shown, a voiceover states that "Rocky Mount is predominantly white and politically conservative" ("Voiceover Statement"). ECF No. 10-1, Ex. A.

Plaintiffs claim that the Segment "centers its theme of racism in Rocky Mount, Virginia, referencing whites versus people of color and specifically, President Donald John Trump supporters as white supremacists being involved in violent insurrection at the Washington, D.C. capit[o]l on January 6, 2021." Compl., ECF No. 1-1, at ¶ 30. However, the Minnix home is located not in Rocky Mount, but in Boones Mill. Id. at ¶ 4.

Plaintiffs claim that the Segment, taken as a whole, "falsely depict[s] the Minnix house as "tied to [the] violence in Washington, D.C. capit[o]l on January 6, 2021;" "associated with the Confederacy;" "supporting President Donald John Trump;" and "an inhospitable place for people of color." Id. at ¶¶ 37–40. Plaintiffs also allege that, "by clear implication," the

2

Segment depicts every resident in the house—including seven minor children, id. at ¶ 14—"as violent insurrectionists, as rebelling Confederacy supporters, as supporters of President Donald John Trump[,] and as individuals and businesses[ ] who stand against or discriminate against people of color." Id. at ¶¶ 41–42.

As a result of this depiction, plaintiffs claim that they have "suffered significant damages" including "fear, trespassers, stalkers[,] and strangers near their residence," causing "destruction of tranquility in their personal abode," and "great mental anguish, which manifested itself in physical pain and injury." Id. at ¶ 46. This has caused several adults and children within the residence to seek professional mental health treatment. Id. at ¶ 47. Crystal Minnix claims to have lost revenue from her independent consulting and sales businesses. Id. at ¶ 48.

Plaintiffs sued in the Circuit Court for Franklin County, alleging that both sets of defendants are liable on theories of defamation per se, assault and endangerment, and negligence. Id. at ¶¶ 61, 65–67, 73–79. Plaintiffs seek $62 million in compensatory damages, $4.9 million in statutory damages, plus costs, attorney fees, and injunctive relief requiring defendants to redact, delete, and destroy images of the Minnix house. Id. at 17.

The Media defendants removed this action to federal court. Although the original parties are not completely diverse, the Media defendants argue that the court ought to overlook the citizenship of the Virginia defendants due to fraudulent joinder. ECF No. 1, at 5–6. Plaintiffs filed a Motion to Remand for lack of subject matter jurisdiction. ECF No. 15, at 7. Both the Media defendants and the Local defendants filed Motions to Dismiss for failure to state a claim. ECF Nos. 8, 10.

## II. Legal Standard

A federal district court has diversity jurisdiction over a case in which there is complete diversity and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A case originally filed in state court that meets these requirements may be removed to the district court for the district "embracing the place where such action is pending." 28 U.S.C. § 1442(a). The doctrine of fraudulent joinder "permits removal when a non-diverse party is (or has been) a defendant in the case," allowing "a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Marshall v. Manville Sales Corp., 6 F.3d 229, 231 (4th Cir. 1993) (internal quotations omitted) (emphasis in original). However, the "'no possibility' standard is not to be applied rigidly." Sheppard v. BAC Home Loans Servicing, LP, No. 3:11-CV-00062, 2012 WL 204288, at *4 (W.D. Va. Jan. 24, 2012) (citing Linnin v. Michielsens, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005). "Instead, the court should ascertain 'whether there is a reasonable basis for predicting liability based on the claims alleged.'" Id. (quoting Linnin, 372 F. Supp. 2d at 819). Further,

> The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor . . . . This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

4

Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Finally, "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction," Marshall, 6 F.3d at 232, and should "strictly construe[ ] a court's jurisdiction when considering an issue of removal" due to federalism concerns. McFadden v. Fed. Nat. Mortg. Ass'n, 525 F. App'x 223, 226 (4th Cir. 2013) (citing Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994)).

If a court has jurisdiction, it may consider a motion to dismiss pursuant to Rule 12(b)(6), which tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual

5

allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd, 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the amended complaint if they are "integral to the Complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the Complaint" where the Complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III. Jurisdiction and Venue

For the reasons stated below in Section IV, the court finds that there is no possibility that the plaintiffs could prevail against the Local defendants on any of their claims. The Local

6

defendants have therefore been fraudulently joined and their citizenship is properly disregarded for the determination of diversity jurisdiction. Marshall, 6 F.3d at 231.

Considering the citizenship of the plaintiffs and the Media defendants, the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiffs are Virginia citizens. ECF No. 1, at 4. The Media defendants are completely diverse from the plaintiffs, as they are citizens of either the District of Columbia, Maryland, or Delaware. Specifically, Sinclair Television Group, Inc. and Sinclair Broadcast Group, Inc. are Maryland citizens, as they are both incorporated in and have their principal places of businesses in the state. Id. at 4. ACC Licensee, LLC is a citizen of both Delaware and Maryland due to the citizenship of its membership. The sole member of ACC Licensee, LLC is Sinclair Television Stations, LLC—incorporated in and with a principal place of business in Maryland—and the sole member of Sinclair Televisions Stations, LLC is Perpetual Corporation, which is incorporated in Delaware and has its principal place of business in Maryland. Id. Devin Dwyer and Jacqueline Yoo are both domiciled in and citizens of the District of Columbia. Id. at 4–5. Elizabeth Thomas is domiciled in and a citizen of Maryland. Id. Plaintiffs seek $62 million in compensatory damages and $4.9 million in statutory damages, far above the $75,000 amount-in-controversy threshold.

## IV. Analysis

The plaintiffs have no possibility of success against the Local defendants on any of their claims. Beyond briefly appearing in the same Segment, Craighead's interview is utterly unconnected to the Minnix family, its members, or their home. Because the court concludes that the plaintiffs have no possibility of success against the Local defendants, the claims against

7

the Local defendants necessarily fail to state a claim under the Rule 12(b)(6) standard. The plaintiffs have also failed to state a claim against the Media defendants.

### 1. Defamation

Under Virginia common law, a defamation claim requires the "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005). To be actionable, "the statement must be both false and defamatory." Id. "[D]efamatory words that are actionable per se" include "those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished" and "those which prejudice such person in his or her profession or trade." Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449–50 (2006) (citing Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981). "A pleading for defamation must allege or otherwise make apparent on the face of the pleading that the alleged defamatory statements are 'of and concerning' the plaintiff." Schaecher v. Bouffault, 290 Va. 83, 99, 772 S.E.2d 589, 598 (2015) (quoting Dean v. Dearing, 263 Va. 485, 488, 561 S.E.2d 686, 688 (2002)).

Plaintiffs claim that all defendants—Local and Media—are liable on a theory of defamation per se because defendants "collectively imply Plaintiffs Minnix as unindicted co-conspirators of the January 6, 2021, insurrection exhibited in Washington, D.C. and linked them to the two (2) Rocky Mount Police Department officers who have actually been indicted and convicted." Compl., ECF No. 1-1, at ¶ 52. Further, plaintiffs claim that defendants "collectively imply" that plaintiffs: "are treasonous against their country and state," "engage in activities in violation of Virginia Code Section 18.2-485, conspiring to incite one race to engage

in insurrection against another race," and that the adult plaintiffs "committed child endangerment, child neglect[,] and child abuse" "due to the highly charged violence surrounding racial bigotry and hatred." Id. at ¶¶ 54, 56, 58.

Plaintiffs also claim that Media defendants Dwyer, Thomas, and Yoo exhibited actual malice and reckless disregard for the truth by: depicting a minor Minnix child in front of the house; depicting the house as in Rocky Mount, when it is actually in Boones Mill; "targeting" the house so as to endanger the health and safety of the residents; failing to gain consent to depict the Minnix residence, profiting off of the image of the child and Minnix household without consent; and acting without knowledge of the plaintiffs. Id. at ¶ 61. Plaintiffs claim that the corporate Media defendants are liable for these actions via respondeat superior. Id.

There is "no possibility" that the plaintiffs can establish a defamation claim against the Local defendants, Marshall, 6 F.3d at 231, and Plaintiffs have failed to state a defamation claim against the Media defendants for a litany of reasons.

First, neither Craighead's Statement nor the Voiceover Statement contains a "provably false factual connotation," much less any false statement that can "reasonably be interpreted as stating actual facts about" any member of the Minnix family. Tronfeld, 272 Va. at 714, 636 S.E.2d at 450 (citing Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136, 137 (1998)); see also Steele v. Goodman, 382 F. Supp. 3d 403, 419 (E.D. Va. 2019) (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990)). Courts are "obliged to assess how an objective, reasonable [viewer] would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message." Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011). Contrary to the plaintiffs's

9

assertion, ECF No. 15, at 9, no "objective, reasonable [viewer] would understand" these statements, or the Segment as a whole, as an assertion that any member of the Minnix family participated in the January 6, 2021, insurrection, were traitors, conspired to incite one race against another, or committed child endangerment. Snyder, 580 F.3d at 219. To arrive at this conclusion, one must impermissibly stretch the "meaning of the alleged defamatory charge . . . beyond its ordinary and common acceptation," making "that certain which is in fact uncertain." Perk v. Vector Res. Grp., Ltd., 253 Va. 310, 316, 485 S.E.2d 140, 144 (1997) (citing Carwile v. Richmond Newspapers, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954)) (internal quotations omitted); see also Virginia Citizens Def. League v. Couric, No. 3:16-CV-00757-JAG, 2017 WL 2364198, at *4 (E.D. Va. May 31, 2017), aff'd, 910 F.3d 780 (4th Cir. 2018).

Further, the Voiceover Statement means what it says—the community of Rocky Mount is "predominantly white and politically conservative." Even if the interpreted as applying to the Minnix family, it is not defamatory to claim that someone is white or conservative. See Guilford Transp. Indus., Inc. v. Wilner, 760 A.2d 580, 594 (D.C. 2000) ("[A] statement that a person is a Republican may very possibly arouse adverse feelings against him in the minds of many Democrats, and even diminish him in their esteem, it cannot be found in itself to be defamatory, since no reasonable person could consider that it reflects upon his character.") (internal quotations omitted). The Segment does incorrectly suggest that the Minnix home is in Rocky Mount, Virginia, when it is actually located in the nearby town of Boones Mill. While false, this statement lacks "the requisite defamatory sting" to the Minnix's reputation. Schaefer, 290 Va. at 92, 772 S.E. 2d at 594 (describing the "defamatory sting" as language that "'tends to injure one's reputation in the common estimation of mankind, to

10

throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous'") (quoting Moss v. Harwood, 102 Va. 386, 392, 46 S.E. 385, 387 (1904)).

Second, Craighead's Statement and the Voiceover Statement are protected by the First Amendment. The First Amendment protects "statements on matters of public concern that fail to contain a provably false factual connotation." Snyder v. Phelps, 580 F.3d 206, 219 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011) (citing Milkovich, 497 U.S. at 20). A statement involves a matter of public concern "when it involves an issue of social, political, or other interest to a community." Id. at 220 (citing Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 446 (4th Cir. 2004)). Likewise, "rhetorical statements employing 'loose, figurative, or hyperbolic language' are entitled to First Amendment protection to ensure that 'public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our nation.'" Id. (quoting Milkovich, 497 U.S. at 20–21) (cleaned up); see also Choi v. Kyu Chul Lee, 312 F. App'x 551, 553 (4th Cir. 2009) (holding that "rhetorical hyperbole, even if insulting, offensive, or otherwise inappropriate, is not actionable") (internal quotation marks and citations omitted). Craighead's Statement that "It's their land and their country and we just live in it" is both hyperbolic and on a matter of public concern: "the effects on her community of the January 6, 2021, Capitol riot," ECF No. 9, at 10. See Snyder, 580 F.3d at 219.

Finally, even if any statement in the Segment were actionable under defamation law, the plaintiffs fail to plead that either set of defendants possessed the requisite intent. Generally,

> In an action brought by a private individual to recover actual, compensatory damages for a defamatory publication, the plaintiff

11

> may recover upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.

Gazette, Inc. v. Harris, 229 Va. 1, 15, 325 S.E.2d 713, 725–26 (1985). However, "in defamation actions based on statements regarding matters of public concern, actual malice must be proved before presumed or punitive damages can be awarded." Shenandoah Pub. House, Inc. v. Gunter, 245 Va. 320, 324, 427 S.E.2d 370, 372 (1993) (citing Milkovich, 497 U.S. at 16–17). "A finding of actual malice requires that the statement be made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Id. (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)). To meet this standard, "the defendant must have made the false publication with a 'high degree of awareness of . . . probable falsity,'" Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 667 (1989) (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)), "or must have 'entertained serious doubts as to the truth of his publication,'" id. (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). The plaintiff must establish actual malice by clear and convincing evidence. Id. (citing Bose Corp. v. Consumers Union, Inc., 466 U.S. 485, 511 n.30 (1984)).

There is no possibility the Local defendants had the requisite intent when Craighead stated her opinion, whether judged under the negligence or actual malice standard. Similarly, as the Voiceover Statement is not false and lacks a defamatory sting, it could not have been made with the requisite intent. Finally, the false suggestion by the Media defendants that the home is located in Rocky Mount also fails under either standard of intent. Because plaintiffs fail to plead any facts suggesting that the Media defendants had a high degree of awareness of

their geographical error or entertained serious doubts as to whether the home was located in Rocky Mount, they cannot establish actual malice. Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. at 667. Under the negligence standard, "[t]he mere negligent error or the careless misstatement of fact which, on its face, does not appear to be defamatory"—such as a misstatement about the location of the home—"will not result in liability for compensatory damages being imposed on the publisher." Gazette, Inc., 229 Va. at 16, 325 S.E.2d at 726.

Plaintiffs further claim that the Media defendants exhibited actual malice by: depicting the Minnix home while a minor child was outside, targeting the home, failing to inform the Minnix family, and failing to gain the Minnix family's consent. These allegations find no footing in defamation law and fail to establish actual malice.

### 2. Assault and Endangerment

Plaintiffs have no possibility of success on either endangerment or assault theories against the Local defendants and have not pled facts sufficient to state such claims against the Media defendants. Because endangerment is not a recognized tort in Virginia, this claim is easily disposed of. Valentine v. Roanoke Cnty. Police Dep't, No. 7:10-CV-00429, 2011 WL 3273871, at *4 (W.D. Va. July 29, 2011). Assault is "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003).

Plaintiffs make a variety of conclusory claims against defendants. They allege that the Segment: "exacerbated a racial divide so as to . . . incite one race to insurrection against another

13

race" and associated the Minnix home with violence. Compl., ECF No. 1-1, at ¶ 64. Therefore, plaintiffs claim, defendants "breached [their] duty of care not to do intentional acts that can reasonably place any member of the Minnix family in fear of imminent bodily harm." Id. at ¶ 66. These allegations fail, because "words alone are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition." Clark v. Commonwealth, 54 Va. App. 120, 129, 676 S.E.2d 332, 336 (2009), aff'd, 279 Va. 636, 691 S.E.2d 786 (2010); see also Glover v. Oppleman, 178 F. Supp. 2d 622, 641 (W.D. Va. 2001) (holding that, under Virginia law, "[m]ere insulting and abusive words alone cannot constitute actionable assault"). Instead, assaultive conduct must carry with it an "unambiguous threat of imminent harm." Id. at 139. The brief display of the Minnix home in a news Segment falls far short of this standard.

Plaintiffs further claim that they have had to request police protection from individuals parked near their house, stalking them, and trespassing on the Minnix family's property. Compl., ECF No. 1-1, at ¶ 68. Plaintiffs allege that the defendants turned the Minnix family into "a target for those who practice predatory acts against children by displaying a child at a known location" and implying that the child belongs to a bigoted family. Id. at ¶ 71. Neither set of defendants is responsible for the assaultive actions of others. "Generally, a person owes no duty to control the conduct of third persons in order to prevent harm to another." Marshall v. Winston, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990) (holding that "[t]his is especially the case when the third person commits acts of assaultive criminal behavior because such conduct cannot reasonably be foreseen"); see also Samuel v. Oromia Media Network, 569 F. Supp. 3d 904, 910–11 (D. Minn. 2021), aff'd, 2022 WL 3134467 (8th Cir. Aug. 5, 2022) (holding that

14

news coverage on matters of public concern is protected from tort liability by the First Amendment, unless it falls into one of the categories listed in Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571 (1942)).

### 3. Negligence

Finally, plaintiffs have no possibility of success in a negligence action against the Local defendants and have not pled facts sufficient to state a negligence claim against the Media defendants. Under Virginia's common law, "[n]egligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." Marshall v. Winston, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990). A duty to protect an individual from third party conduct arises where "a special relation exists (1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." Burns v. Gagnon, 283 Va. 657, 669, 727 S.E.2d 634, 642 (2012).

Plaintiffs fail to demonstrate that either set of defendants breached any cognizable duty. Plaintiffs list a number of supposed duties, among them a duty of truth and a duty to adequately investigate. Compl., ECF No. 1-1, at ¶¶ 75–76. However, "a plaintiff cannot prevail on a negligence claim after she loses a defamation claim based on the same pleadings." Abadian v. Lee, 117 F. Supp. 2d 481, 489 (D. Md. 2000); Zeran v. Am. Online, Inc., 958 F. Supp. 1124, 1133 n.19 (E.D. Va.), aff'd, 129 F.3d 327 (4th Cir. 1997) (noting that courts "uniformly reject" attempts to disguise defamation claims as other torts). Additionally, "publishers owe no duty of due care to readers or to the public at large." McMillan v. Togus Regional Office, Dept. of Veterans Affairs, 120 F. App'x 849, 852 (2d Cir. 2005).

15

Plaintiffs further claim that all defendants possessed a duty to protect children. Compl., ECF No. 1-1, at ¶¶ 73–74. While duties to children exist in certain circumstances, there is no universal duty to protect all children at all times. See Best v. District of Columbia, 291 U.S. 411, 419 (1934) (holding that a duty to children "must find its source in special circumstances"). There is no possibility that such a relationship existed between Craighead and the Minnix children when she participated in this interview, far from the Minnix home. Plaintiffs do not plead any facts establishing such a special relationship between the Media defendants and the Minnix children.

In the Motion to Remand, plaintiffs claim that Craighead—a candidate for office—had a "duty of due care to protect potential constituents," such as the Minnix family, and a "duty to inquire," conceivably into how her statement would be used in the Segment. ECF No. 15, at 8. Craighead bore no such duties. And even if such duties existed, her participation in the interview could not possibly constitute breach.

## V. Attorney Fees

The Local defendants request attorney fees and costs pursuant to Virginia's anti-SLAPP law. Per the current provision,

> A person shall be immune from civil liability for . . . a claim of defamation based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party.

Va. Code Ann. § 8.01-223.2(A).[1] Furthermore, "any person who has a suit against him dismissed . . . pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Id. at § 8.01-223.2(B).

Virginia's anti-SLAPP statute is intended to "deter lawsuits that are designed to chill speech about matters of public concern." McCullough v. Gannett, Co., No. 122CV1099RDALRV, 2023 WL 3075940, at *15 (E.D. Va. Apr. 25, 2023). "The chief concern motivating an anti-SLAPP statute is to protect defamation defendants from litigating 'meritless civil action[s]' that are 'intended to force upon a political opponent the high cost of defending against a lawsuit.'" Id. (quoting ABLV Bank v. Ctr. for Advanced Def. Stud. Inc., No. 1:14-cv-1118, 2015 WL 12517012, at *2 (E.D. Va. April 21, 2015)).

Under the terms of the statute, the Local defendants are eligible for attorney fees and costs, as the court here dismisses a defamation action based on Craighead's Statement, which was on a matter of public concern, protected by the First Amendment, and communicated to a third party. However, the award of attorney fees and costs under this provision is permissive. Fairfax v. CBS Corp., 2 F.4th 286, 296–97 (4th Cir. 2021). While there is no set list of factors guiding the exercise of the court's discretion, "other courts in this district have looked at whether the action is 'frivolous, unreasonable, or without foundation' and whether 'there is substantial basis in fact and in law for the non-prevailing party to pursue the action.'" McCullough, 2023 WL 3075940, at *16 (quoting Fairfax v. CBS Broad. Inc., 534 F. Supp. 3d 581 (E.D. Va. 2020), aff'd sub nom. Fairfax v. CBS Corp., 2 F.4th 286 (4th Cir. 2021)). Generally, courts have declined to grant requests for attorney fees and costs under Virginia's

---

[1] Amendments to this statute, 2023 Va. Acts 462, become effective July 1, 2023. Va. Code. Ann. § 1-214(A).

17

anti-SLAPP statute because "there was some basis in fact and in law" for the plaintiff to bring his case, even if that basis failed the Rule 12(b)(6) standard. Id. (declining to grant attorney fees and costs because plaintiff had "adequately pled facts showing that [the defendant] could theoretically be held liable for defamation"); see also Fairfax, 534 F. Supp. 3d at 601 (deciding against awarding fees because the broadcast statements were defamatory per se and the plaintiff presented a cogent legal theory).

Unlike these prior cases, the defamation claim against the Local defendants lacks foundation in fact or law. Therefore, it is appropriate to award attorney fees and costs in this case. Craighead exercised her First Amendment right to participate in an interview and speak on a matter of public concern affecting her community. She has since been forced to defend against a baseless defamation action, brought by persons whose home was briefly glimpsed in the Segment. Even in the context of the Segment, Craighead's Statement cannot reasonably be understood to refer to any member of the Minnix family. She was not interviewed in front of the Minnix house, did not suggest any connection to any plaintiff, and had no influence over placement of her interview immediately before the clip of the Minnix home. The only connection between Craighead's interview and the plaintiffs is that both Craighead and the Minnix home briefly appeared in the same Segment. Granting this request for attorney fees and costs therefore serves the statute's purpose by deterring groundless defamation claims based on the mere happenstance of appearing in the same news Segment.

## VI. Conclusion

For the aforementioned reasons, the plaintiffs's Motion for Remand, ECF No. 15, is **DENIED.** Both the Motions to Dismiss as to the Local defendants, ECF No. 8, and the

Media defendants, ECF No. 10, are **GRANTED**. Further, the Local defendants request for attorney fees and costs, ECF No. 8, is **GRANTED** and the Local defendants are directed to submit further briefing related to these costs within fourteen (14) days of entry of this Order.

It is **SO ORDERED**.

Entered: May 17, 2023

Michael F. Urbanski
Chief United States District Judge